## AMERICAN IMPORT CO. v. UNITED STATES (No. 2694)[1]

REMISSION.

Goods were ordered in February, April, and July, 1922, invoiced in October, and entered December 29. Invoice, entered, and appraised values were in marks; and each greatly exceeded the other in the order named. Whether the wide variances were due to exchange or market change does not appear. The lapse of time was sufficient to put importer on inquiry, especially in view of the well-known unsettled conditions in currency and market values; and the judgment of the board denying his petition for remission of additional duty for undervaluation under section 489, Tariff Act of 1922, is affirmed.

### United States Court of Customs Appeals, April 17, 1926

APPEAL from Board of United States General Appraisers, Abstract 50105

[Affirmed.]

*Frank L. Lawrence* (*Martin T. Baldwin* of counsel) for appellant.
*Charles D. Lawrence*, Assistant Attorney General (*Ralph Folks*, special attorney, of counsel), for the United States.

[1] T. D. 41550.

[ Submitted without oral argument April 1, 1926]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

BLAND, Judge, delivered the opinion of the court:

The Board of General Appraisers denied the petition of the importer filed under section 489 of the Tariff Act of 1922, for the remission of additional duties assessed by the collector of customs at the Port of Los Angeles, on account of an undervaluation upon a part of the merchandise covered by an entry of goods shipped from Germany.

The importer has appealed to this court from the judgment of the board, and contends that the evidence in the case shows satisfactorily that such undervaluation of the merchandise at a less value than that returned upon final appraisement and reappraisement, was without any intention to defraud the revenue of the United States, or to conceal, or misrepresent the facts of the case, or to deceive the appraiser, as to the value of the merchandise.

The merchandise was ordered in the months of February, April, and July, 1922, and invoiced at Schmalkalden, Germany, in four different invoices, dated October 10, 10, 12, and 21, respectively. The order was accepted for delivery at prices prevailing at the time of invoice or delivery. It was invoiced, entered, and appraised as follows:

| Date of invoice | Invoice value | Entered value | Appraised value |
|---|---|---|---|
| October 21, 1922 | 145, 988. 00 | 262, 778. 40 | 891, 488. 90 |
| October 10, 1922 | 66, 352. 00 | 173, 178. 72 | 449, 733. 59 |
| October 10, 1922 | 25, 860. 00 | 67, 494. 60 | 200, 135. 60 |
| October 12, 1922 | 36, 528. 00 | 107, 027. 04 | 267, 873. 00 |
| Total in marks | 274, 728. 00 | 610, 478. 76 | 1, 809, 231. 09 |

Appeal to reappraisement was taken and the appraised value was affirmed. It will be observed that the appraised and reappraised value exceeds the entered value by almost 300 per centum.

The goods were shipped from Hamburg, Germany, on the Am. S. S. *Missourian,* on November 11, 1922, and were entered on December 29, 1922. The invoices came to the importer at San Francisco and were forwarded to its customs broker, Wheeler, Elder & Elder, at Los Angeles. A representative of the brokerage firm testified that he received no instructions from the importer, but that his firm had an arrangement with the importer to notify them in case importer had any information differing from the invoiced values.

A representative of the importing firm testified that his firm instructed its brokers to "increase the value, to raise the value of the merchandise in proportion to the decline of the exchange" from the time the invoice was made out until the time the shipment left

Hamburg, unless notified to the contrary, and that unless there were some specific figures to go to the broker in Los Angeles he was to follow the invoiced prices in all respects except as to the matter of exchange. The representative of the importing firm furthermore testified that between the period of delivery (the date of invoice), and the date of exportation there was from 50 to 75 per centum difference in the *mark* figures.

The record does not disclose what the value of the *mark* was on the date of invoice or the date of exportation. The papers disclose that the appraiser valued the goods in *marks* in a total sum amounting to almost three times the number of *marks* at which they were entered. The broker, on entry, advanced the aggregate invoiced value of the goods, which was 275,728 *marks*, to 610,478 *marks*, in order to allow for the depreciation in the value of the *mark*. The record does not disclose whether this advance was a mere guess or whether it was based upon the officially declared value of the *mark* on the date of exportation. According to the testimony of the witnesses for appellant, no advance was made on account of any increase in the basic value of the goods. No attempt was made to show that 610,478 *marks* on the date of exportation was equivalent in value to 275,728 *marks* on the date of invoice. However, if this had been shown it would not have been enough, since fluctuation of exchange may not have been the sole cause of the increase in the market value of the goods.

Whether this increase in value upon appraisement and reappraisement was due to the difference in the value of the *mark* on the date of exportation between that found by the appraiser and that indicated by the entry of the goods, or whether there had been an actual change in the market price of the goods in Germany, notwithstanding the currency fluctuation, is not disclosed in the record. The record on reappraisement is not before us. The brief of appellant discusses the fluctuation of the value of the *mark*, while the Government's brief repeatedly calls attention to the fluctuation in market value in Germany during that period of time. The burden is upon the importer to make this situation clear if he expects to profit by it.

The length of time existing between the date of order and invoice, the date of shipment, and the date of entry would seem to be sufficiently long to have afforded the importer ample opportunity to make all necessary inquiries and investigations so as to determine the correct value of the goods, and the same period of time would also seem to be sufficient, especially in view of the well-known unsettled condition in currency and market values, to have put the importer upon such inquiry.

The board has found from the evidence that the proof is unsatisfactory and that petitioner had not met the burden imposed upon

him by the statute, and we can not say, from the evidence, that the conclusion of the board is wrong. The judgment of the Board of General Appraisers is *affirmed.*